WO

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Glenn Cornell Worley, | No. CV-12-0440-PHX-RCB (MEA) |
| Plaintiff, | **O R D E R** |
| v. | |
| Correctional Medical Services, et al. | |
| Defendants. | |

Plaintiff Glenn Cornell Worley, an inmate confined by the Arizona Department of Corrections (ADC), filed this *pro se* civil rights action. (Doc. 8.)  Defendant Fredrickson moves for summary judgment.[1]  (Doc. 22.)  Plaintiff opposes the motion.  (Doc. 26.)

The Court will grant the motion and terminate the case.

**I.    Background**

In Count I of his First Amended Complaint, Plaintiff alleges that his Eighth Amendment rights were violated when Dr. Fredrickson, D.D.S., refused to perform a root canal on Plaintiff.  (Doc. 8.)  Plaintiff states that Fredrickson was aware of the severity of Plaintiff's dental issue but informed Plaintiff that a root canal was not an option after he discovered that Plaintiff is serving a life sentence. Plaintiff claims that as a result of

---

[1]Pursuant to *Rand v. Rowland*, 154 F.3d 952, 962 (9th Cir. 1998) (*en banc*), the Court notified Plaintiff of his obligation to respond to the motion for summary judgment.  (Doc. 24.)

1  Fredrickson's actions, Plaintiff developed a cyst that burst and then spread an infection to
2  his tongue and inner cheek.  Another dentist provided Plaintiff with a root canal several
3  months later.  (*Id.*)

4        On screening under 28 U.S.C. § 1915A, the Court directed Fredrickson to answer
5  Count I and dismissed the remaining claims and Defendants.  (Doc. 10.)

6        In his motion for summary judgment, Defendant argues that the evidence shows
7  that he was not deliberately indifferent and that he is entitled to qualified immunity.
8  (Doc. 22.)  In support of his motion, Defendant submits his Statement of Facts (Doc. 23,
9  DSOF)), his declaration (*id.*, Ex. B, Fredrickson Decl.), the declaration of Richard Rowe,
10 M.D. (*id.*, Ex. E, Rowe Decl.), the declaration of Dr. Sonj Stake (*id.*, Ex. G, Stake Decl.),
11 medical records and Health Needs Requests (HNRs), and excerpts from the transcript of
12 Plaintiff's deposition, dated January 8, 2013 (Exs. C, D, F).  In opposition, Plaintiff
13 submits his Memorandum (Doc. 26), with exhibits, and his declaration (Doc. 27, Pl.
14 Decl.), with exhibits (*id.*).

15 **II.**     **Motion for Summary Judgment**

16     **A.**     **Legal Standards**

17         **1.**     **Summary Judgment**

18       A court "shall grant summary judgment if the movant shows that there is no
19 genuine dispute as to any material fact and the movant is entitled to judgment as a matter
20 of law."  Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23
21 (1986).  Under summary judgment practice, the moving party bears the initial
22 responsibility of presenting the basis for its motion and identifying those portions of the
23 record, together with affidavits, which it believes demonstrate the absence of a genuine
24 issue of material fact.  *Id.* at 323.

25       If the moving party meets its initial responsibility, the burden then shifts to the
26 opposing party who must demonstrate the existence of a factual dispute and that the fact
27 in contention is material, i.e., a fact that might affect the outcome of the suit under the
28 governing law, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986), and that the

dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.* at 250; *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). The opposing party need not establish a material issue of fact conclusively in its favor; it is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968).

When considering a summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits or declarations, if any. *See* Fed. R. Civ. P. 56(c). At summary judgment, the judge's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. The evidence of the non-movant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But, if the evidence of the non-moving party is merely colorable or is not significantly probative, summary judgment may be granted. *Id.* at 248-49. Conclusory allegations, unsupported by factual material, are insufficient to defeat a motion for summary judgment. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). *See Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007) ("[c]onclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment").

## 2.  Medical/Dental Claim

To prevail on a claim under the Eighth Amendment for prison medical or dental care, a prisoner must demonstrate "deliberate indifference to serious medical needs." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). A plaintiff must show (1) a "serious medical need" by demonstrating that failure to treat the condition could result in further significant injury or the unnecessary and wanton infliction of pain and (2) the defendant's response was deliberately indifferent. *Jett*, 439 F.3d at 1096 (citations omitted). To act with deliberate indifference, a prison official must both know of and disregard an excessive risk to

- 3 -

1    inmate health; the official must both be aware of facts from which the inference could be

2    drawn that a substantial risk of serious harm exists, and he must also draw the inference.

3    *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).  Deliberate indifference in the medical

4    context may be shown by a purposeful act or failure to respond to a prisoner's pain or

5    possible medical need and harm caused by the indifference.  *Jett*, 439 F.3d at 1096.

6    But mere claims of "indifference," "negligence," or "medical malpractice" do not

7    support a claim under § 1983.  *Broughton v. Cutter Laboratories*, 622 F.2d 458, 460 (9th

8    Cir. 1980); *Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990).  Moreover,

9    differences in judgment between an inmate and prison medical personnel regarding an

10   appropriate medical diagnosis or treatment are not enough to establish a deliberate-

11   indifference claim.  *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996).

12   **B.    Discussion**

13   The Court will grant summary judgment to Defendant because Plaintiff fails to

14   create a triable issue of fact as to deliberate indifference for refusing to perform a root

15   canal on tooth #19 or to provide antibiotics.  Moreover, Plaintiff fails to provide

16   admissible evidence that he had a ruptured cyst that was caused by infection in tooth #19.

17   As a preliminary matter, Defendant notes that Plaintiff fails to submit a separate

18   statement of facts as required by Local Rule of Civil procedure 56.1(b).  But *pro se*

19   pleadings are liberally construed.  *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Thomas*

20   *v. Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010) (noting that the Ninth Circuit has

21   consistently that held that courts should construe liberally motion papers and pleadings

22   filed by *pro se* inmates and should avoid applying summary judgment rules strictly);

23   *Bernhardt v. Los Angeles County*, 339 F.3d 920, 925 (9th Cir. 2003) ("[c]ourts have a

24   duty to construe pro se pleadings liberally, including pro se motions").

25   In addition, to the extent that the Court relies on any evidence to which either

26   party has objected, the Court overrules the objection.

27   . . .

28

- 4 -

1          **1.     Deliberate Indifference**

2                  Plaintiff appears to complain in his response about his overall dental care, alleging

3          that it was 118 days from the initial examination until the first procedure and 227 days

4          until the next procedure.   (Doc. 26 at 8-9.)   That is beyond the scope of the First

5          Amended Complaint; the issues here are the refusal to perform a root canal on tooth #19

6          and to provide antibiotics and the alleged spread of infection.

7                  Defendant saw Plaintiff for dental care a total of four times between October 28,

8          2010 and May 12, 2011; he last saw Plaintiff on May 12. (DSOF ¶¶ 7, 9, 15, 17, 19.)

9          Plaintiff twice refused extraction of tooth #19.  (*Id.* ¶¶ 13, 17.)

10                 It is undisputed that Defendant first saw Plaintiff, who is HIV+, at his initial intake

11         dental exam on October 28, 2010.   (DSOF ¶¶ 6, 7.)   Defendant took x-rays and a

12         panoramic film and conducted a soft tissue exam and a temporomandibular joint

13         evaluation.   He noted that Plaintiff's oral hygiene was poor and on examination found

14         moderate tartar, plaque and tooth decay, as well as gingivitis (inflammation of the gum

15         tissue).  Defendant explained that there was a years-old pre-existing chronic infection on

16         tooth #19 that would become painful if not removed, that a filling would not fix this

17         tooth, and that root canal treatment was highly uncertain.   Defendant advised Plaintiff

18         that extraction was the necessary treatment and to immediately submit an HNR.   The

19         treatment plan was to extract tooth #19, restore tooth #14 and tooth #18 with fillings, and

20         perform scaling [cleaning].  (*Id.*)

21                 Defendant saw Plaintiff again on November 2, and performed plaque and calculus

22         removal.  (*Id.* ¶ 9.)  Defendant again explained that a filling would not help tooth #19 and

23         that the situation could be life threatening.   (*Id.*)

24                 On February 8, 2011, Plaintiff refused an emergency exam appointment and

25         signed a Refusal to Submit to Treatment form refusing a dental extraction because he did

26         not want the tooth extracted.   (*Id.* ¶ 13.)   Although Plaintiff asserts that the form was

27         blank, he admits writing that he did not want the tooth extracted.  (Doc. 26 at 4-5.) He

28         was still on the routine care list.  (DSOF ¶ 13.)

1    Defendant saw Plaintiff on February 23, 2011, filled tooth #18, and advised
2    Plaintiff to submit an HNR for his next dental visit. (*Id.* ¶ 15.)

3    In response to a May 5 HNR, Defendant saw Plaintiff on May 12 for an
4    emergency visit to evaluate his complaint of pain; the pain was in tooth #19 and occurred
5    while eating certain foods. (*Id.* ¶ 17.) Defendant asserts that tooth #19 was positive for
6    pain to percussion [tapping] and there was no oral facial infection evident. A radiograph
7    showed large periapical pathology of tooth #19, and Defendant assessed Plaintiff with
8    chronic apical periodontitis of tooth #19—serious gum infection that destroys soft tissue
9    and bone that support the teeth. Defendant reviewed the medical history and dental films
10   and discussed the options, risks and benefits, especially the risks associated with not
11   removing tooth #19, which was the source of the infection. (*Id.*) Plaintiff alleges that he
12   asked about having a root canal through outside treatment and that Defendant then asked
13   him how long he would be here. (Doc. 26 at 5-6.) Plaintiff further alleges that when he
14   said he has a life sentence, Defendant said that no outside care was available. (*Id.*)
15   Plaintiff refused the extraction and signed a Refusal form; he claimed he did not want the
16   tooth extracted for religious reasons, which he later admitted was not true. (DSOF ¶ 17,
17   Ex. F, Pl. Dep. 33:5-25, 34:1-11.)

18   Defendant attests that the length of Plaintiff's sentence had nothing to do with the
19   treatment of his dental needs. (*Id.*, Fredrickson Decl. ¶ 18.) Viewing the facts in the light
20   most favorable to Plaintiff, even if Defendant stated that no outside care was available
21   after Plaintiff disclosed his life sentence, this is insufficient to create a triable issue of fact
22   as to deliberately indifferent treatment. Defendant attests that it was his medical opinion
23   that tooth #19 was abscessed and that due to Plaintiff's HIV+ status and compromised
24   immune system and his poor oral hygiene, the best treatment option was to extract tooth
25   #19 and that a root canal was not an option. (DSOF ¶ 24, Fredrickson Decl. ¶ 15.) In
26   addition, root canals are not predictable in all cases because there can be other
27   extenuating circumstances that would preclude the success of root canal treatment, like a
28   deep fracture in the tooth. (*Id.* ¶ 25, Fredrickson Decl. ¶ 15.)

1    It is well-settled that a difference of medical opinion is insufficient to establish
2    deliberate indifference, and to prevail on a claim involving choices between alternative
3    courses of treatment, a prisoner must show that the course of treatment the doctors chose
4    was medically unacceptable in light of the circumstances and that it was chosen in
5    conscious disregard of an excessive risk to plaintiff's health.  *See Toguchi v. Chung*, 391
6    F.3d 1051, 1058 (9th Cir. 2004); *Jackson*, 90 F.3d at 332.  Plaintiff offers no admissible
7    expert evidence that the treatment option offered by Defendant was medically
8    unacceptable under the circumstances.  Even the fact that Dr. Lawrence later performed
9    the root canal on tooth #19 on July 13 (DSOF ¶ 22) is not evidence that extraction was
10   medically unacceptable; in fact, Dr. Lawrence's notes show that he advised Plaintiff that
11   if the infection in tooth #19 continued or if the pain increased, the tooth would have to be
12   removed.  (*Id.,* Doc. 26, Ex. 13 (Doc. 26 at 25.))

13   The Court finds that Defendant was not deliberately indifferent for refusing to
14   perform a root canal; Defendant did not refuse to treat Plaintiff.  Rather, he offered a
15   treatment plan that Plaintiff refused.

16   As to the infected gum, Defendant attests that he did not prescribe an antibiotic to
17   treat the abscessed tooth #19 because it would have been a temporary measure and that
18   antibiotics are not indicated for a chronic, low-grade infection; rather, they are for acute
19   infections that are intended to be resolved by extraction or root canal treatment within 10
20   days.  (*Id.*, Fredrickson Decl. ¶ 17.)  Defendant also observes that when a person is
21   HIV+, he has a compromised immune system, so when prescribing an antibiotic, there
22   are consequences to the patient's general health which must be taken into account.  An
23   HIV+ individual can become more susceptible to other infections.  (*Id.*)  Again, Plaintiff
24   offers no evidence that this course of treatment was medically unacceptable under the
25   circumstances.

26   Plaintiff also claims that a delay in treatment caused a cyst to form from the gum
27   infection and that the cyst burst, causing the spread of infection to Plaintiff's tongue and
28   cheek.   (Doc. 8 at 3.)  Fredrickson attests that at no time did the infection in tooth #19

1   involve Plaintiff's cheek or tongue or cause cellulitus.  (DSOF ¶ 26, Fredrickson Decl.

2   ¶ 19.)  The undisputed facts show that Plaintiff was seen by Dr. Stake on June 14, 2011,

3   for a chronic condition follow-up for Plaintiff's asthma and HIV conditions.  (DSOF ¶

4   27.)  She notes that, in addition to other complaints, Plaintiff reported jaw irritation.  Dr.

5   Stake noted that the jaw was non-tender and it opened and closed without difficulty; Dr.

6   Stake assessed Plaintiff with oral thrush and was prescribed Nystatin, which is used to

7   treat fungal infections of the skin and mouth, for 14 days.  (*Id.*)  She attests that the "oral

8   thrush was unrelated to [Plaintiff's] dental status" and that if she "had appreciated

9   cellulitis in [Plaintiff's] mouth, [she] would have prescribed an antibiotic and referred

10  [Plaintiff] to the dentist."  (*Id.*, Stake Decl. ¶ 3.)

11       Although Plaintiff suggests that Dr. Stake recognized cellulitis (Doc. 26 at 7), that

12  is not what her declaration states.  Plaintiff also claims that he knows from personal

13  experience that thrush cannot be definitively assessed on visual examination alone and

14  requires positive identification by culture.  (*Id.*)  But Plaintiff is not qualified to offer a

15  medical opinion or evidence, and the issue is not whether Plaintiff had thrush but whether

16  he has evidence of a cyst and spread of infection due to tooth #19.

17       Plaintiff also alleges that when he saw Dr. Lawrence on July 7, 2011, Dr.

18  Lawrence pointed out that he noticed where the cyst had formed, burst, and appeared to

19  have spread.  (Doc. 26 at 8, Ex. 13 (Doc. 26 at 25).)  The page from Plaintiff's dental

20  chart shows that he was treated by Dr. Lawrence on July 7 and 13, but the Court does not

21  see a reference to a cyst.  (*Id.*, Ex. 13.)  Moreover, even if Dr. Lawrence made such a

22  finding, there is no evidence that it was caused by the infection in tooth #19.

23       Plaintiff offers no evidence that the infection in tooth #19 caused any cyst or

24  spread of infection.  Plaintiff has the burden of proof on harm and causation, *see Leer v.*

25  *Murphy*, 844 F.2d 628, 634 (9th Cir. 1988), and he fails to create a triable issue of fact as

26  to either.

27  . . .

28

1

### 2.      Qualified immunity

The Court finds that Defendant is entitled to qualified immunity regarding a refusal to perform a root canal or provide antibiotics.  A defendant in a § 1983 action is entitled to qualified immunity from damages for civil liability if his or her conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  The "qualified immunity inquiry" asks if the right was clearly established at the relevant time. *Saucier v. Katz*, 533 U.S. 194, 201-02 (2001).  This inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition."  *Id.* at 201.  "The relevant, dispositive inquiry . . . is whether it would be clear to a reasonable officer that his conduct was unlawful *in the situation he confronted*."  *Id.* at 202 (emphasis added).

Although there is a clearly established right to dental care, there is no clearly established right to a root canal or antibiotics, certainly under the medical circumstances of this case.

The Court need not address the remainder of Defendant's arguments.

**IT IS ORDERED:**

(1)     The reference to the Magistrate Judge is withdrawn as to Defendant's Motion for Summary Judgment (Doc. 22).

(2)     Defendant's Motion for Summary Judgment (Doc. 22) is **granted**, and the claims are dismissed with prejudice.

(3)     The case is terminated, and the Clerk of Court must enter judgment accordingly.

DATED this 11th day of September, 2013.

Robert C. Broomfield
Senior United States District Judge

- 9 -